HERBERT C. PARSONS vs. HENRY H. JENNINGS.

First Judicial District, Hartford, January Term, 1899. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The plaintiff and defendant had formerly been partners in the manage-
ment of two theaters. The copartnership articles contemplated the
management of but one theater, but a year afterwards another was
leased and thereafter both were conducted under the terms and con-
ditions of the original agreement. In an action for an accounting
it was *held* that inasmuch as it was clearly the duty of the plaintiff
under the partnership contract to personally pay the salary of a
treasurer of the theater first leased; the trial court did not err in
charging him with the item for similar services in respect to the
second theater.

In one of his defenses and in a counterclaim, the defendant alleged,
among other things, that during the continuance of the partnership
he received and paid out the sums of money set forth in an itemized
statement thereto annexed. In reply to this averment the plaintiff
alleged that he had no knowledge or information thereof sufficient
to form a belief. *Held* that the itemized statement referred to was
not filed by the defendant as and for the account ordered by the
court, but as a part of his defense and counterclaim; that it related
to but one of the theaters, was not final and conclusive upon the de-
fendant, nor did it furnish the basis or starting point from which
the trial court was bound to proceed in taking and stating the ac-
count; and that the defendant was entitled to a full and complete
accounting in the light of all the books, memoranda and entries be-
fore the court, as well as the oral testimony of the parties.

Argued January 6th—decided March 9th, 1899.

ACTION for an accounting and for a recovery of the amount
found due thereon, brought to the Superior Court in Hart-
ford County and tried to the court, *Prentice, J.;* facts found
and judgment rendered for the plaintiff for $244 only, and
appeal by him for alleged errors in the rulings of the court.
*No error.*

The complaint contained the common money counts and a
special count. As no bill of particulars was filed under the
common counts and nothing appears to have been claimed
under them, it is unnecessary to notice them further.

The special count alleged in substance, that the plaintiff

and defendant, prior to October 1st, 1896, had been partners in conducting two theaters in Bridgeport; that the copartnership was by mutual consent dissolved on the 2d of October, 1896; that during its existence and since the dissolution of the partnership, the defendant had collected large sums of money belonging to it, for which he refused to account, and which he refused to apply on the copartnership debts or to share with the plaintiff; and that since the dissolution the plaintiff had been compelled to pay and had paid large sums of money for the benefit of said copartnership and in discharge of its debts.

In the answer two defenses were set up. The first admitted that the copartnership had existed and had been dissolved, and that the defendant had collected moneys of the firm substantially as alleged; the other allegations were either expressly or in effect denied. The second set out the written agreement of copartnership with respect to one of the theaters, and a subsequent oral agreement with respect to the other theater, and alleged, in effect, that there was nothing due the defendant from the plaintiff by reason of the partnership relation. Paragraph 4 of the second defense was as follows: "During said partnership the defendant, in the authorized management of said theaters for said partnership, received and paid out the sums of money set forth in the annexed statement marked Exhibit B." This exhibit is a detailed, itemized statement of moneys received and paid out, covering some twenty pages of the record.

The reply to the second defense admitted the execution of the written agreement of copartnership with respect to one of the theaters, and the making of the subsequent oral agreement with respect to the other; but alleged that under the oral agreement this last theater "was to be conducted in the same manner, and the duties imposed upon each person were the same as that contained in the" written agreement. The other allegations of the defense were expressly or in effect denied.

In the written agreement of copartnership set forth in the second defense, the plaintiff agreed as follows: "Said Par-

sons is to take such share of the work upon himself as he shall think best, and to frequently look over the business, and at all times, when necessary, to assist in the general management of the business; and when the theater business opens next season he is to himself act as treasurer, or to furnish a proper person to act as treasurer at his expense." The defendant agreed as follows: " He doth further agree that he will carry on and manage the business of said partnership as may be reasonably required by said Parsons, and as required by the needs of said business; that he will provide all the bill posters and materials for posting the same, and do all the bill posting that is required for the proper carrying on of the business at his own private expense and charge."

The defendant also filed a counterclaim in which he claimed, among other things, to recover for moneys paid by the firm for the services of a treasurer, which should have been paid by the plaintiff, and for his own services for bill posting for the Auditorium Theater. The reply to the counterclaim was in substance a denial of all these claims of the defendant.

Upon the agreement of the parties, judgment was rendered that the defendant should account, and the accounting was had before the court.

The court found the following facts: "1. On the 30th day of March, 1894, the plaintiff and defendant formed a copartnership at Bridgeport for the purpose of conducting the Park City Theater at that place, under the terms of a written agreement of partnership. 2. Said partnership was dissolved by mutual consent on or about October 1st, 1896. 3. The Park City Theater was conducted by them throughout the period of said partnership. 4. About August 15th, 1895, said partners orally agreed to lease the Auditorium Theater, also located in said city, and to conduct it in connection with the Park City Theater as a part of their partnership business. 5. Thereafter, during the continuance of said partnership, the two theaters were managed and conducted by said firm, in the same manner and under the same terms and conditions as the Park City Theater had previously been, to wit: under the terms and conditions of said written agreement. 6. Dur-

ing the continuance of said partnership the defendant personally managed the business of the firm, contracted most of its obligations, received and disbursed most of its moneys, and had immediate charge of the bank account as well as the books and papers connected with the business. 7. The plaintiff, on the other hand, who resided and managed a theater in Hartford, did not give his personal attention to the details of the management of the firm's business. He, however, had full and free access at all times to the firm's accounts and check-books, and was well aware of the financial experience and condition of the firm, which was at times, and especially during the last months of its existence, such as to require his particular attention thereto. 8. From the beginning of said partnership to about the      day of June, 1896, the accounts of said firm relating to both of said theaters were kept by the 'treasurer' of the Park City Theater, who was Mr. Parson's personal representative, and furnished by him as provided in the partnership agreement. In the performance of his work this 'treasurer' was kept in constant touch with the check-books and their showings, and was at all times aware of what they purported to show. 9. A separate account book was kept for each of said theaters, but the firm had only one bank account, which began and ended with the firm's existence, and into which all its business, except as hereinafter stated, and nothing but its business, entered in any way. 10. The principal receipts of the firm came through the box-offices of the two theaters. The box-office attendant, called the 'treasurer' as hereinafter stated, after each performance made out a statement of receipts, deducted from this gross sum any petty expenses incurred and paid by him, and paid over to Mr. Jennings the balance. These payments from both theaters down to within a few weeks of the termination of the partnership, when financial difficulties prompted another course of action, Mr. Jennings deposited in the bank as received. Against these deposits checks were drawn for the payment of all bills, save the petty ones already referred to as paid by the treasurer. The deposits made and checks drawn were shown upon the check-stubs, which were regu-

larly filled out, and the balance in bank struck and carried forward every third check. It was from these stubs and stub-entries that the books were weekly made up and balanced. 11. During the last few weeks of the firm's existence, by reason of attachments which were feared, Mr. Jennings placed the receipts in the safe instead of in the bank, and paid bills therefrom in cash and not by check. It did not appear in evidence that any balance of cash was left unexpended in the safe at the termination of the partnership, or the contrary. From the financial experience of the firm during these weeks, as disclosed by the testimony, however, it is apparent that such balance, if any, was only a trifling and inconsiderable one, and I so find. 12. Upon a few occasions the partners paid moneys into the treasury of the firm. These payments were invariably of equal amounts by the partners, and, save upon one occasion when each partner paid out of his personal funds one half of a month's rent of the Park City Theater, went into the bank. In like manner the partners, upon a few occasions, drew out of the firm certain amounts. These withdrawals were also, with one exception referred to in the following paragraph, made from the bank, and in equal amounts between the parties. 13. Upon one occasion Mr. Parsons took the receipts of an entertainment, amounting to $86.80. This amount never went into the bank, and Mr. Jennings never had its equivalent or any share thereof. 14. The footings carried forward upon the check-book stubs show a balance of seventy-three cents in bank at the dissolution of the partnership. 15. Two checks appear upon the stubs and are deducted from the balance on hand as shown upon the stubs, which were never, in fact, used, to wit, check No. 1229, Feb'y 25th, 1896, for $96, and check No. 1537, Sept. 1st, 1896, for $75. 16. There is an apparent error of $52.50 in entering the receipts August 19th, 1896, for one entertainment, 'Eight Bells,' at too small an amount, which error should be corrected. 17. The account book in which was entered the receipts and expenditures of the firm on account of the Park City Theater, kept, save for the last two months, by the plaintiff's representative aforesaid, was

before the court. 18. The account book in which was entered the receipts and disbursements of the firm on account of the Auditorium Theater, has been lost, and nothing was before the court from which in any way the receipts and disbursements in this branch of the firm's business, or the net result thereof, could be ascertained or approximated, excepting as disclosed by the check-book stubs and the entries thereon. 19. This account book, when last seen, was in a desk in the manager's office of the theater. This was in the month of September, 1896, just before the firm's departure from the building. Presumably, it was lost in the confusion of that removal. 20. All the check-stubs and check-stub books covering the period of the partnership were before the court. 21. Exhibit B, annexed to the defendant's answer, is an accounting for the business of the Park City Theater alone. Its items are those of the Park City Theater account book only. It embraces no item of receipt or disbursement growing out of the business of the Auditorium Theater. It contains, therefore, only a partial statement of the financial transactions of the firm. 22. In June, 1896, each partner contributed $100 to provide funds for the payment of the rent of the Park City Theater, and in July each partner contributed $175 for a similar purpose. Said Parsons then had knowledge of the crippled condition of the firm's finances and made his said contributions accordingly, and after seeing the books and check-books which disclosed the necessity for the contributions. At that time the firm had not sufficient funds to meet its obligations, and for the most part throughout the existence of the partnership the receipts exceeded disbursements by only an inconsiderable sum. 23. Throughout the period of said partnership said Jennings supplied all the bill-posting for both theaters. I find that it was his duty, under the partnership agreement, to do this, at his own expense, and disallow any claim on his part for reimbursement therefor. 24. The plaintiff, as required by the partnership agreement, supplied a 'treasurer,' which, in theatrical parlance, is the name given to the person who performs the duties attached to the box-office, for the Park City Theater, at his

own expense, from the beginning of said partnership to the close of the theatrical season of 1896, to wit, to about the first day of July, 1896. Thereafter, until the dissolution, in the month of September following, the 'treasurer' of the Park City Theater was paid from partnership funds. These payments amounted to $50.25. This sum I find that it was Mr. Parsons' duty to have paid personally. 25. Throughout the period during which the Auditorium was conducted by the firm, the 'treasurer' of that theater, who was a necessary adjunct to the theater, was paid from partnership funds. These payments amounted to $252. This sum I find that it was Mr. Parsons' duty, under the partnership agreement, to have personally paid. 26. During the time that the Auditorium Theater was being conducted by the firm, Mr. Jennings drew a check for $384 in payment for bill-posting done by him for said theater. Observing the stub of this check upon the check-book, Mr. Parsons thereupon drew to his own order a check of the firm for a like amount, to wit, $384. Mr. Jennings' action in drawing said check to his order in payment for said bill-posting, was unauthorized by the partnership agreement. These two checks, therefore, drawn to each partner for the sum of $384, represent withdrawals of those amounts from the firm. The check to Mr. Jennings, being made upon the account of the Auditorium Theater, went upon the account book of that theater, and does not appear in Exhibit B. The withdrawal by Mr. Parsons appears in that exhibit as a payment by the firm and to him. 27. After the dissolution each of said partners paid, with their private funds, sundry outstanding partnership debts, as follows : By said Parsons, for rent, $525 ; to Julius Cohn, for bookings, $100 ; to Klaw and Erlanger, for bookings, $75 ; and to one Fuessell, for orchestra, $42 ; making in all $742. By said Jennings, for orchestra, $96 ; and for legal services, $31 ; making in all $127. 28. I find upon a full accounting between the partners that the principal sum of $225.09 and $19 interest, is due the plaintiff from the defendant. 29. In making said accounting I accepted, as furnishing the only *data* in evidence, even approximately reliable, the entries

Parsons v. Jennings.

upon the check-books and stubs, and stated the account as appears in my memorandum of judgment, with the balance at dissolution as shown by said books and stubs, to wit, seventy-three cents, as the basis of computation.

" Upon the trial the plaintiff claimed: 1. That Exhibit B concluded the defendant, and must be the starting point for determining the relations of the partners and the amount due the plaintiff. 2. That plaintiff was entitled to have Exhibit B corrected, and to credit for payments made by him on account of said partnership not entered therein, and judgment based upon such accounting and additional credits. 3. That in the absence of the account of the Auditorium Theater, in which the said $384 drawn by the defendant appeared, the like sum drawn by the plaintiff should be deducted from Exhibit B and disregarded. 4. That said sums of $384 drawn by the parties must be set off against each other; and that the burden was upon the defendant to show that the application of both sums should not be made to the Auditorium Theater accounts. 5. That the plaintiff preformed his partnership contract relating to providing a treasurer, and was not chargeable personally with any expense incurred for other employees than those he had personally paid. 6. That the burden of proof was upon the defendant to show any special contract in regard to the conduct of the Auditorium Theater other than the original partnership contract, and to show the condition of the accounts of the partners, and the receipts and expenditures of the Auditorium Theater. 7. That the plaintiff was entitled to judgment for $823.88 with interest from the time the accounting was demanded, or at least from the commencement of the action. Notwithstanding these claims of the plaintiff, the court rendered judgment as on file."

The reasons of appeal, seven in number, are simply restatements of the seven claims made on the trial, coupled with the allegation that the court overruled the respective claims.

*Theodore M. Maltbie* and *George B. Fowler*, for the appellant (plaintiff).

*Stiles Judson, Jr.,* for the appellee (defendant).

TORRANCE, J. Upon the accounting had in the court below, the plaintiff made certain claims which he now alleges that the court overruled to his harm. These claims will be briefly considered in the order in which they are set forth in the plaintiff's brief. . . .

The first is that the court erred in charging the plaintiff, personally, under the terms of the partnership agreement, with the amount paid for the services of a treasurer of the Auditorium Theater. The amount so charged is $252.

Under the written agreement of copartnership it was clearly the duty of the plaintiff, so far as the Park City Theater was concerned, either to act as treasurer himself or to furnish one at his own expense. About this no question is made. But the court finds that the Auditorium Theater was managed and conducted by the firm under the terms and conditions of the written agreement. This is, in effect, a finding that they did so by virtue of the oral agreement subsequently made with respect to the Auditorium. If so, the plaintiff was rightly charged with the sum in question.

In his reply, the precise claim of the plaintiff is that the Auditorium, by the agreement of the parties, was to be conducted in the same manner as the other theater, and "that the duties imposed upon each person" with regard to that theater, were the same as those imposed by the written agreement with respect to the other. In addition to this, it appears that during the copartnership the plaintiff understood the matter in this way; for when the defendant drew a check for his services for bill posting for the Auditorium, the plaintiff promptly drew a check for a like amount to himself, claiming that such bill posting was an expense to be borne by the defendant, personally, under the agreement. Upon the record, it is difficult to see how the defendant was bound to furnish bill posting for the Auditorium at his expense, if the plaintiff was not bound to furnish a treasurer for it at his expense. Both are bound or neither is bound. We think the ruling upon this point was correct. But if it should be conceded that

neither party was bound, the plaintiff was not harmed by the ruling, for the amount disallowed to the defendant was larger by considerable than the amount charged to the plaintiff.

The second error set forth upon the brief relates to the account filed by the defendant with his second defense as Exhibit B.

The plaintiff's claim upon this point seems to be that the account stated in that exhibit, and as there stated, was final and conclusive upon the defendant; that it should have been taken as the basis for determining the amount due the plaintiff; and that he was entitled to have it corrected by having credits for certain payments made by him entered therein, and to a judgment based upon it when so corrected.

This exhibit was not filed as and for the account ordered by the court. It was filed as a part of one of the defenses and as a part of the counterclaim. It formed no part of the first defense. It is not even alleged to be a full account of all moneys received and paid out by the defendant in the partnership business. All of its items were in dispute under the pleadings. The finding is that it is an accounting for the business of the Park City Theater, only. It contains no item of receipt or disbursement growing out of the business of the Auditorium, and is therefore only a partial statement of the financial transactions of the firm. Clearly, under the first defense, neither the defendant nor the court was bound to consider Exhibit B as limiting the way in which the account should be taken. Under that the defendant was entitled to have a full accounting as to both theaters. He was also entitled to this under certain allegations of his counterclaim. The plaintiff had called for a full and complete accounting as to both theaters. From his familiarity with the business and accounts of the firm he must have known that Exhibit B was only a partial account, and he was apprised by the pleadings that the defendant was entitled to a full accounting. The Auditorium books had been lost, but other books and accounts remained and were before the court, by means of which a full accounting could be had. From these and other sources, aided by the evidence of the parties given

and received, so far as we can see, fully and freely and without objection, with reference to the business of both theaters, the court took the account and found the balance. Upon the record, we think the plaintiff's claim upon this point has neither foundation nor merit, and was properly overruled.

The third claim in the brief is that the court erred "in not deducting from the account rendered by the defendant the sum of $384 withdrawn by the plaintiff to set off a like amount withdrawn by the defendant; both sums were taken from the receipts of the Auditorium theater." This claim is based upon the plaintiff's theory as to the conclusiveness of Exhibit B upon the defendant and the court, heretofore considered, and falls with it. Upon the account as taken, the record discloses no error with respect to this item of $384.

In connection with this claim the plaintiff says the court imposed upon him the burden of proving the contents of the lost book of the Auditorium Theater, and of showing that the defendant had more of the receipts of that theater than he was entitled to. It nowhere in the record appears that the court made any such ruling. It does appear that the plaintiff, on the trial, claimed that the burden of showing the condition of the accounts, and the receipts and expenditures of the Auditorium Theater, was upon the defendant; but it nowhere appears that this claim was overruled.

The fourth and last claim upon the brief is, that upon the facts found the court "should have rendered judgment for the plaintiff to recover the amount due him upon correction of defendant's account, after adding thereto the amount paid by plaintiff on account of partnership debts." This claim is also based upon the plaintiff's theory that Exhibit B should have been taken as the sole basis of the accounting, and falls with it.

There is no error.

In this opinion the other judges concurred.